# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD BOXLEY,**<br>*Plaintiff, pro se*<br><br>**v.**<br><br>**WELLPATH, LLC, *et al.*,**<br>*Defendants.* | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **CIVIL ACTION**<br><br>**NO. 24-5473** |

NITZA I. QUIÑONES ALEJANDRO OCTOBER 15, 2026

## MEMORANDUM OPINION

### INTRODUCTION

Plaintiff Richard Boxley, an inmate the State Correctional Institution — Phoenix ("SCI Phoenix"), filed this *pro se* civil rights action in the Montogomery County Court of Common Pleas against Defendants Wellpath, LLC ("Wellpath"), Wellpath Medical Director Anthony Letizio, D.O., and Wellpath Program Manager Dawn Menya (collectively, "Defendants").[1] (ECF 1-3). Director Letizio and Wellpath Program Manager Menya ("Defendant Employees") are sued in their individual capacities pursuant to 42 U.S.C. § 1983. In the complaint, Plaintiff alleges, *inter alia*, that Defendants, individually and/or collectively, violated his First and Eighth Amendment rights by exhibiting deliberate indifference to his medical condition, obstructing Plaintiff's proper medical treatment, and retaliating against him for filing grievances. (*Id.*). On October 15, 2024, Defendants timely removed the matter to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. (ECF 1).

---

[1] The following named/unnamed defendants from Plaintiff's initial state court complaint are not Defendants in the present action: Jorge Dominicis, Brittney Huner, Monica Savage, Jane & John Doe(s). (ECF 1).

Before this Court are Defendants' motion to dismiss filed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), (ECF 7) (the "First Motion"), and Defendant Wellpath's motion to dismiss it as a party, ("Defendant Wellpath's motion" or the "Second Motion"), following a Bankruptcy Discharge of claims and a plan of reorganization confirmed by the United States Bankruptcy Court for the Southern District of Texas. (ECF 17). Plaintiff has filed a response to the First Motion, (ECF 23), but did not file a response to the Second Motion.[2] Defendants also filed a reply to Plaintiff's response in opposition. (ECF 24). For the reasons set forth, the First Motion is granted, *in part*, and denied, *in part*, and Defendant Wellpath's motion is granted.[3]

**BACKGROUND**

When considering a motion to dismiss, this Court must accept as true all well-pleaded factual allegations in the complaint. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The facts alleged in the complaint and which are relevant to Defendants' motions to dismiss are as follows:

> Plaintiff, an inmate at SCI Phoenix at the time relevant to his claims, avers that he was diagnosed by the Pennsylvania Department of Corrections with a retinal vein occlusion with macular edema. (ECF 1-3 ¶ 29). Due to this condition, Plaintiff suffered bleeding and severe blurry vision in his right eye. (*Id.*). Plaintiff avers that proper treatment of his condition required "monthly [] injections, in a timely manner, and conducted by an off-site Ophthalmologist," where timely treatment is crucial, as delay "creates irreversible damage to Plaintiff's eye." (*Id.* ¶¶ 30, 32).
>
> In his complaint, Plaintiff provides what appears to be a detailed medical treatment plan, with scheduled injection dates, and annotations reflecting the delay

---

[2] Plaintiff's response, (ECF 23), is incorrectly docketed as a response to the Second Motion. Instead, the response is a response to the First Motion.

[3] The Honorable Jeffrey Schmehl recently addressed materially identical claims against these same Defendants in *Howard v. Wellpath, LLC*, 2026 WL 881708 (E.D. Pa. Mar. 31, 2026). This Court is not bound by the decisions of its coordinate colleagues. *See Threadgill v. Armstrong World Industries, Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991). This Court has independently reviewed the issues in this case, finds Judge Schmehl's analysis persuasive, and adopts it here, drawing on that opinion's language where the issues overlap.

of each injection. (*Id.* ¶ 55). Of the first sixteen injections that Plaintiff was prescribed, Plaintiff alleges that only two were given on time, and others with several delays exceeding fifty days. (*Id.*). Plaintiff further avers that on September 14, 2021, his "medication was switched to 'Triesence' (Triamcinolone), a potent injectable steroid." (*Id.* ¶ 31). Plaintiff contends that a series of "unexplainable gaps in treatment" followed his September 14, 2021 appointment over a span of eighty-two (82) days, (*id.* ¶ 33), and additional "unexplained gaps" in treatment of seventy-three (73) days between March 31, 2022, through July 13, 2022, (*Id.* ¶ 34). Following his July 2022 appointment, Plaintiff indicates that the Ophthalmologist informed him that "[a] [p]atch of [h]is [r]etina [h]ad [d]ied, due to a direct result[] of the lack of blood flow and repeated delays." (*Id.* ¶ 35). Plaintiff avers that the vision to his right eye, was "substantially impaired . . . as a direct result of all of the above." (*Id.* ¶ 36).

Immediately upon receipt of the July 2022 diagnosis, Plaintiff filed Grievance #990642[4] against several individuals, including Defendants Menya and Dr. Letizio. (*Id.* ¶ 37). Plaintiff alleges that Defendants were placed "on notice" of his missing treatments. (*Id.*). Separate from Grievance #990642, Plaintiff made repeated requests to Defendants for timely medical treatment. (*Id.* ¶ 126). Through February 27, 2023, Plaintiff continued to experience delays to his injection schedule, with treatment gaps spanning up to 196 days. (*Id.* ¶ 55). Some of the delays are noted in relation to medical considerations (*e.g.* "High Blood Pressure," "Cataract Complications," and "Cataracts & Glaucoma Tests"). (*Id.*). Plaintiff further alleges that despite these continued delays, Defendant Dr. Letizio made repeated promises to Plaintiff — assuring him that he would see his specialist — that were not fulfilled. (*Id.* ¶ 131). Plaintiff's complaint attributes the further decline of his condition to these delays, which caused "exacerbat[ion to] his blurry vision, loss of peripheral vision, loss of depth perception, chronic eye pain, and the serious deterioration of his visual acuity." (*Id.* ¶ 41).

Based on these facts, Plaintiff alleges that Defendants violated his Eighth Amendment right to proper and timely medical treatment resulting from their deliberate indifference to his health and safety. (*Id.* ¶¶ 112-46). Plaintiff also alleges a state law medical negligence claim for failure to comply with medical standards of care in his medical treatment. (*Id.* ¶ 111). He further claims that Defendant Wellpath, the medical services contractor for SCI Phoenix, (*id.* ¶ 4), is liable for the violations of his civil rights based on their "pattern, practice, custom, and culture of deliberately denying and & delaying prescribed/recommended surgeries/treatment." (*Id.* ¶ 44; *see also id.* ¶

[4] A copy of Grievance #990642 was not provided to the Court.

118). Plaintiff also alleges retaliatory treatment by Defendants linked to the grievance he filed against them, seemingly, piecing a basis of a First Amendment claim.[5] (*Id.* ¶ 143). Plaintiff seeks declaratory relief, and compensatory and punitive damages for his claims. (*Id.* §§ VII-X).

**STANDARD OF REVIEW**

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the "Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210-11. The "Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" (*Id*. at 211) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id*. (internal quotation marks and citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a) (alteration in original)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Id*. at 678) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (*Id*.). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts sufficient to "'nudge [his or her] claims across the line from

---

[5] Although Plaintiff does not explicitly allege retaliatory conduct as a violation of his First Amendment rights throughout the complaint, Defendants argue First Amendment defenses in response to the inexplicit alleged infringements. (ECF 7, at 19). Nevertheless, this Court will construe Plaintiff's claims of retaliation as a claim for violation of Plaintiff's First Amendment rights, (*Cf. Wilson-Walker v. Gambone*, 2025 WL 242835 (E.D. Pa. Jan. 17, 2025) (construing Plaintiff's retaliation claims as first amendment claims); *and Talbert v. Corr. Dental Assocs.*, 2019 WL 2714856 (E.D. Pa. June 27, 2019) (construing Plaintiff's retaliation claims as first amendment claims)) and consider Defendants defenses.

conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570) (alteration in original).

While complaints and submissions filed by *pro se* litigants are subject to particularly liberal interpretation and are "held to 'less stringent standards than formal pleadings drafted by lawyers,'" *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)), the Court still must ensure that a *pro se* complaint contains "sufficient factual matter; accepted as true; to state a claim to relief that is plausible on [its] face," *id.* (quoting *Iqbal*, 556 U.S. at 678).

**DISCUSSION**

As noted, Plaintiff raises the following claims pursuant to § 1983; *to wit*: (1) deliberate indifference to Plaintiff's health and safety for violation of his Eighth Amendment rights (Counts II-VII); (2) retaliation for violation of his First Amendment rights (Count VIII); and (3) pursuant to the Constitution and Pennsylvania law, a declaratory judgment that Plaintiff's civil rights were violated (Count I). Plaintiff raises the claims for Eighth Amendment violations against both Defendants Wellpath and Dominicis, (Counts II-III), Defendant Menya, (Count IV), and against individual providers, (Counts V-VII). His declaratory judgment and retaliation claims, (Counts I, VIII), are raised against all Defendants.

***I. Plaintiff's § 1983 Claims Against Defendant Wellpath***

The Court will first consider the uncontested Second Motion filed by Defendant Wellpath, (ECF 17), and the jurisdictional defense that is dispositive of whether a decision on the merits of Plaintiffs' complaint can be enforced against Defendant Wellpath.

a. *Defendant Wellpath's Motion to Dismiss Following Bankruptcy Discharge*

Defendant Wellpath argues that its discharge in the Bankruptcy Court requires this Court to dismiss Plaintiff's claim against it with prejudice because the claim predates its 2024 bankruptcy petition. (ECF 17). Indeed, Defendant Wellpath was discharged from liability by the United States Bankruptcy Court for the Southern District of Texas, Houston Division, for all claims that arose prior to November 11, 2024. *See In Re Wellpath Holdings, Inc.*, No. 24-90533 (Bankr. S.D. Tx.), ECF Nos. 2596, 2679, 2680; *see also* 11 U.S.C. § 524(a)(2) ("A discharge in a [Chapter 11 bankruptcy case] . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.").

Here, Plaintiff filed his complaint on December 27, 2023. Defendant Wellpath filed its Chapter 11 petition on November 11, 2024. (*See* ECF 8, at 1). Defendant Wellpath argues that, pursuant to the Plan of Reorganization approved by the Bankruptcy Court, it and its affiliated debtors were discharged, and the holders of prepetition claims, like Plaintiff, were permanently enjoined from continuing those claims and/or enforcing recovery against the Debtors. (ECF 17 ¶ 7). Defendant Wellpath argues that "holders of Claims or Interests that affirmatively elected to opt out of the Plan's Third-Party Release may bring or continue to pursue claims against the Non-Debtor Defendants, including employees of the Debtors or employees of [Wellpath]." (*Id.* ¶ 12). Defendant Wellpath conceded in a Status Report that Plaintiff has filed an opt-out of the third-party release. (ECF 15). As such, this concession makes clear that Defendant Wellpath's discharge in bankruptcy has no effect on Plaintiff's ability to proceed against any employee of Wellpath.

Nonetheless, Defendant Wellpath argues that a Liquidating Trust has assumed its liability "for all General Unsecured Claims, including personal injury and wrongful death claims that arose before the Petition Date." (ECF 17 ¶ 14) (citation omitted); *see also* Order Confirming Ch. 11 Plan, *In re Wellpath Holdings*, No. 24-90533 (Bankr. S.D. Tex. May 1, 2025), ECF No. 2596 at 107 (Assumption of General Unsecured Claims by the Liquidating Trust). In the Order dated January 25, 2026, the United States Bankruptcy Court for the Southern District of Texas clarified that in accordance with the Trust Distribution Procedures ("TDPs") adopted when confirming Wellpath's Chapter 11 plan and establishing the Liquidating Trust:

> Holders of General Unsecured Claims arising from alleged pre-petition personal injury tort or wrongful death may proceed in the appropriate civil court and litigate such claim with the Trust included as a nominal defendant. As a nominal defendant, the Trust is not required to file answers, participate in discovery or hearings, or take an active role in any such litigation; provided, however, that nothing herein or in the Plan or TDPs shall prevent the Trust from participating in any such case at the direction of the Trustee or engaging in settlement discussions for purposes of determining stipulated Allowed Claim Amounts at the discretion of the Trustee.

Revised and Amended Clarifying Order, *In re Wellpath SF Holdco*, No. 24-90566 (Bankr. S.D. Tx. Jan. 25, 2026) (cleaned up). Accordingly, for the reasons set forth, the Second Motion is granted, Defendant Wellpath is dismissed from this present action, and all remaining claims against Defendant Wellpath are dismissed.

### *II. Plaintiff's Eighth Amendment Deliberate Indifference Claims*

In the First Motion, Defendants argue that the Eighth Amendment claims against Defendant Menya should be dismissed for failure to state a claim because she is not a medical provider and cannot be held liable for deliberate indifference to a serious medical need. (ECF 7, at 15). Defendants also argue that the Eighth Amendment claims against Defendants Menya and Dr. Letizio should be dismissed because Plaintiff has failed to allege facts demonstrating deliberate indifference to a serious medical need. (*Id.* at 16). Finally, Defendants argue that the state law

professional negligence claims against Defendants should be dismissed because Plaintiff failed to file a certificate of merit ("COM"), as required by Pennsylvania Rule of Civil Procedure 1042.3. (*Id*. at 22-23).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and/or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also*, *e.g., Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits," a plaintiff "must plead that each Government-official defendant, through [the official's] own individual actions, has violated the Constitution"); *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207)). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. New Jersey Dept. of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Baker v. Monroe Township*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

To state a constitutional claim under the Eighth Amendment based on the failure to provide medical treatment, a prisoner must allege facts showing that prison officials were deliberately indifferent to the prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97 (1976). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." *Id.* at 837. "A medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).

The United States Court of Appeals for the Third Circuit, ("Third Circuit"), has found deliberate indifference in a range of circumstances, including, *inter alia*, "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death." *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1023 (3d Cir. 1991). However, "[n]ot every complaint of inadequate prison medical care rises to the level of deliberate indifference." *Anderson v. Price*, 2023 WL 5814664, *2 (3d Cir. Sept. 8, 2023). "Where a prisoner is receiving some amount of medical treatment, [courts] presume that the treatment is adequate absent evidence that it violates professional standards of care." *Id.* (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990)); *see also Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) ("Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Brown*, 903 F.2d at 278 ("While the distinction between deliberate indifference and malpractice can be subtle, it is well established that

as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights"); *see also Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017).

a. *Defendant Menya*

Defendants argue that Defendant Menya, a Clinical Medical Provider (CMD), is not a medical provider, but rather an administrator. (*See* ECF 7, at 15). They assert that the Eighth Amendment claims against her should be dismissed because, as a non-provider, she cannot be held liable for deliberate indifference to a serious medical need and her only involvement with Plaintiff concerned grievances he filed. (*Id.*). Plaintiff, however, argues that Defendant Menya was personally aware of Plaintiff's treatment plan, the importance of timely appointments, and that the employees she supervised failed to schedule Plaintiff's appointments, as those were scheduled. (ECF 1-3 ¶¶ 69, 88-92, 122-26).

Plaintiff's claims against Defendant Menya based on inadequate medical care, however, fail because Defendant Menya is not a medical provider and because Plaintiff has alleged that he was under the care of medical staff at SCI Phoenix. (*See* ECF 1). The Third Circuit has held that "[i]f a prisoner is under the care of medical experts, . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff."). Plaintiff has also failed to allege sufficient facts showing that Defendant Menya was deliberately indifferent to his medical needs and intentionally refused to provide it; that she delayed necessary medical treatment based on a non-medical reason; or prevented him from receiving needed or recommended medical treatment. Lastly, even if Plaintiff had successfully alleged sufficient facts

to support a claim of deliberate indifference against Defendant Menya, she was not a medical provider and, therefore, could not be expected to assess the severity of Plaintiff's condition, or provide the care required. Thus, Plaintiff has failed to state a deliberate indifference claim against the non-provider Defendant Menya, and the motion to dismiss this claim against Defendant Menya is granted.

b. *Defendant Dr. Letizio*

Plaintiff alleges that Defendant Dr. Letizio, a medical doctor, had "actual, personal, [and] constructive knowledge" of his medical condition, treatment plan, and of the potential risks to his health in delaying such treatment. (ECF 1-3 ¶ 128). Plaintiff further alleges that Defendant Dr. Letizio made repeated promises, assuring Plaintiff that he would be seen by his specialist, and was not. (*Id.* ¶ 131). Plaintiff explicitly alleges that these delays were devoid of medical reason, "but to save on cost, in retaliation, and to inflict pain and suffering." (*Id.* ¶ 128). In the motion to dismiss, Defendant Dr. Letizio denies any retaliatory conduct, and argues that Plaintiff's claims do not amount to anything beyond disagreement with the care provided. (ECF 7, at 16-18).

In effect, Defendant Dr. Letizio asks the Court to find that Plaintiff's treatment is a result of determinations reached by virtue of his professional judgment warranting the dismissal of the claims against him. At this stage of ligation, the Court is unable to reach this conclusion. Plaintiff's factual assertions alleged that Defendant Dr. Letizio was aware of Plaintiff's need for further treatment, and that he denied Plaintiff such treatment for reasons beyond professional judgment.[6] Although medical provider defendants receive the benefit of a presumption of the

---

[6] Defendant Dr. Letizio argues that the complaint does not allege any direct interactions with, or treatment by Defendant Dr. Letizio, and that the deliberate indifference claims must fail. (ECF 7, at 16-17). As pled, this Court finds the alleged facts of the promises made by Defendant Dr. Letizio concerning the treatment plan are sufficient to establish the plausibility of a direct client-patient relationship between Plaintiff and Defendant Dr. Letizio.

validity of care, a substantial departure from practice or standards can rebut this presumption. *See White v. Napolean*, 897 F.2d 103, 113 (3d Cir. 1990). This Court finds that the facts alleged, taken as true at this stage of litigation, regarding Defendant Dr. Letizio's alleged promises that Plaintiff "would be sent soon to the Specialist's office," indicate that Defendant Dr. Letizio's professional judgment suggested Plaintiff's treatment was necessary. (*Cf. Price*, 2023 WL 5814664, at *4 (affirming the dismissal of claims against a prison medical director for determinations seemingly reached by virtue of their professional judgment)). Yet, care was not provided as ordered. Additionally, of the twenty-three delayed injections, three were apparently delayed for medical purposes, while the remaining twenty were allegedly delayed for unspecified reasons. (*See* ECF 1-3, at 55). Considered alongside these twenty unexplained lapses in Plaintiff's treatment plan, Defendant Dr. Letizio's alleged broken promises plausibly suggest a substantial departure from standard for medical practice. The deliberate indifference claim based on these allegations, which must be accepted as true at this stage, may proceed as pleaded because there are sufficient plausible facts alleged to support a denial of treatment and a deliberate indifference claim. Therefore, the deliberate indifference claim and related state law negligence claim,[7] against Defendant Dr. Letizio are sufficient to proceed and will not be dismissed.

c. *Supervisory Liability against Defendants Dr. Letizio and Menya*

Lastly, in Count XIII, Plaintiff attempts to hold Defendants Dr. Letizio and Menya accountable for the actions of their subordinates under a theory of *respondeat superior* and

---

[7] Defendant Dr. Letizio also argues that the professional negligence claims under state law should be dismissed because Plaintiff failed to file a Certificate of Merit ("COM") as required by Pennsylvania Rule of Civil Procedure 1042.3. However, recent United States Supreme Court precedent dictate that the motion be denied to the extent he seeks dismissal on this basis, as the COM requirement has no application in federal court. *See Berk v. Choy*, 607 U.S. 187, 198 (2026) (holding state law requiring submission of an affidavit from a medical professional attesting to the suit's merit has no application in federal court); *Talley v. Pillai*, 116 F.4th 200, 207 n.7 (3d Cir. 2024).

vicarious liability. (ECF 1 ¶¶ 142-46). Individual liability can be imposed under §1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of *respondeat superior*." *Evancho v. Fisher*, 423 F.3d 347 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08. Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. Here, Plaintiff contends that Defendants Dr. Letizio and Menya are liable for the violations of his civil rights based on their failure or refusal "to control their employees . . . to follow instructions, in scheduling Plaintiff's prescribed medical treatment and follow-ups . . . ." (ECF 1 ¶ 144). However, Plaintiff fails to allege with any particularity the supposed conduct from Defendants Dr. Letizio or Menya that would direct subordinates to act with indifference against Plaintiff. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208. Accordingly, Plaintiff's claims against Defendants Dr. Letizio and Menya are not plausible, as pled, and are dismissed.

### *III. Plaintiff's First Amendment Retaliation Claim*

Defendants also argue that their actions cannot be considered as retaliation, insisting that the treatment period in question took place before Plaintiff filed his grievance and, further, that he was not prevented from filing any grievance or this lawsuit. (ECF 7 ¶ 19-22).

To state a claim of retaliation, the prisoner plaintiff must establish that: (1) the conduct was constitutionally protected; (2) that plaintiff suffered an adverse action at the hands of prison

officials; and (3) that plaintiff's constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him. *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001). Under the second element, "[a]n adverse action is one 'sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" *Watzon v. Rozum*, 834 F.3d 417, 422 n.6 (3d Cir. 2016) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'" *Id.* at 423 (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (alteration in original)). To satisfy the third element, Plaintiff must provide evidence in support of "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Id.* at 424 (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d at 267 (3d Cir. 2007)).

Here, Plaintiff attributes his decision to file a grievance to be the cause of the alleged retaliatory conduct, consisting of the delays and denials of his prescribed medical treatment. A filing such a grievance does "implicate[] conduct protected by the First Amendment." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). Here, Defendants argue that they did not deny the constitutional protections implicated by filing a grievance, but instead insist that the alleged retaliatory conduct, *i.e.*, the lapses in treatment, occurred before Plaintiff filed his grievance and, *de facto*, cannot be retaliatory. At this stage of litigation, this Court is unpersuaded by this argument for two reasons; to *wit*: in his complaint, Plaintiff makes clear that continued gaps in his treatment also occurred *after* he filed his grievance, with some extending up to 196 days in length. (*See* ECF 1-3 ¶ 55) (cataloging missed treatments as late as February 2023); (ECF 7 ¶ 21) (confirming that Plaintiff filed his grievance on July 22, 2022); and because, it is plausible, as Plaintiff contends, that any of Plaintiff's informal complaints made before he filed his grievance

served as a catalyst for retaliatory treatment. *See Watzon*, 834 F.3d at 422-23 (finding the first retaliation prong satisfied, even when the alleged retaliation occurred before a formal grievance was filed). Accordingly, because the law is clear as to the constitutional protections afforded to grievances, the facts alleged are sufficient to establish the first prong of Plaintiff's *prima facie* retaliation claim.

Plaintiff alleges that in retaliation to his grievance, Defendants Menya and Dr. Letizio delayed and/or denied his prescribed medical care. This Court finds, at this stage of litigation, that the prolonged and undue delay to prescribed medical care allegations were a sufficiently adverse consequence sufficient to establish the second prong of Plaintiff's *prima facie* retaliation claim.

Plaintiff alleges that the grievance against the Defendants caused them to take retaliatory action against him. However, Plaintiff does not allege any facts to suggest a retaliatory motive in the delay of Plaintiff's care. Plaintiff fails to allege any facts that establish either a suggestive temporal proximity between the protected activity and the alleged retaliatory action, or a pattern of antagonism couples with timing to establish causal link. *See Watzon*, 834 F.3d at 424. In contrast, and more clearly stated throughout Plaintiff's complaint, the undue delay is apparently attributed to Defendants' desire to reduce costs, (ECF 1-3 ¶ 55), and, at times, to legitimate medical comorbidities. (*Id.* ¶ 119). Although, "causation, like any other fact, can be established from the evidence gleaned from the record as a whole[,]" *Watzon*, 834 F.3d 417, 424 (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)), here, this Court is also unable to infer and attribute the continued delay of Plaintiff's treatment to a retaliatory motive from any pleaded factual allegations. "[W]here the temporal proximity is not so close as to be 'unduly suggestive,'" the appropriate test is "timing plus other evidence." *Id.* (citing *Farrell*, 206 F.3d at 280). Standing alone, even if accepted as true, the continued delay to Plaintiff's treatment is insufficient to

establish "other evidence" in support of the third retaliation prong. Accordingly, Plaintiff's First Amendment retaliation claims as to Defendants Menya and Dr. Letizio are to be dismissed without prejudice.

**CONCLUSION**

For the foregoing reasons, Defendant Wellpath's motion, (ECF 17), is granted and all claims against Defendant Wellpath are dismissed, *with prejudice*. The First Motion, (ECF 7), is granted, *with prejudice*, as to Plaintiff's Eighth Amendment medical indifference and professional negligence claims against Defendant Menya; the First Motion is denied, *without prejudice*, as to Plaintiff's Eighth Amendment medical indifference and state law negligence claims against *only* Defendant Dr. Letizio; and the First Motion is granted, *without prejudice*, as to Plaintiff's First Amendment retaliation claim against Defendants Menya and Dr. Letizio.

An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.